# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:09CR0351 ERW/TCM |
| WILLIAM J. MABIE, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the Government's request that William J. Mabie ("Defendant") be compelled to submit to the collection of a Deoxyribonucleic Acid ("DNA") sample. [Doc. 93]

On August 11, 2009, the Court signed a search warrant authorizing the Government to obtain such a sample from Defendant. On August 14, 2009, Defendant, who is currently in the custody of the U.S. Marshal Service, was transported to the booking facility in the Federal Courthouse and refused to permit the collection of his DNA sample. The parties then appeared in Court, at which time Defendant and his counsel acknowledged that Defendant would not voluntarily submit to the DNA collection.

## Background

Defendant is charged with seven counts of mailing or sending threatening communications to police officers, their wives, and other family members. An evidentiary hearing was held on Defendant's previous pretrial motions wherein evidence was presented that in written communications Defendant threatened police officers and others with

violence. Subsequent to the evidentiary hearing, the prosecutor presented a search warrant to obtain a DNA sample from Defendant for the purpose of determining whether an unsigned written communication contained in an envelope could be connected to Defendant through his DNA. That search warrant was signed by the undersigned. The search warrant affidavit contains sufficient information to provide probable cause to believe that the envelope and letter in question originated from Defendant. Moreover, Defendant does not contest the Court's probable cause determination nor the validity of the above search warrant. (See Def.'s Mem. in Opposition, Doc. 92 at 2 n.1.) The issue now before the Court is whether the Court can order Defendant to comply with the search warrant and submit to a DNA collection.

According to the Declaration of Forensic Laboratory Technician with the St. Louis Metropolitan Police Department Crime Laboratory, Ranee Ho, the DNA sample will be obtained with the use of a buccal swab. (See Gov. Mem. Ex. 1.) A buccal swab is a swab of the inside cheek of an individual to obtain cells that contain nucleic material. (Gov. Ex. A) The cells are used to test for DNA. (Id.) The lab personnel will follow standard laboratory procedure for safety and personal protection throughout the process. (Id.) This procedure includes taking two buccal swabs of the inner check with a sterile cotton swab, one of each check, by rubbing the swab gently or lightly along the inside of the cheek. (Id.) The swab is then packaged and stored in the "ultra cold freezer at the laboratory." (Id.)

## Discussion

Citing **Schmerber v. California**, 384 U.S. 757 (1966), for the proposition that an intrusion into his body implicates privacy concerns of such magnitude that the intrusion may

be unreasonable regardless of whether it produces inculpatory evidence, Defendant objects to the collection of his DNA on the grounds that it is an involuntary medical procedure in violation of the Fourth Amendment. In **Schmerber**, the police obtained, without a search warrant and over the defendant's objection, a blood sample from a defendant suspected of driving while intoxicated. **Id**. at 758-59. The court first held that the forced blood test did not implicate the Fifth Amendment right of forced self-incrimination, noting that the Fifth Amendment "offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." **Id.** at 764. As the Fifth Amendment did not protect against such "compelled intrusions into the body for blood," the question was whether the Fourth Amendment's "proper function" of constraining "against intrusions which are not justified in the circumstances, or which are made in an improper manner" protected the defendant from a compelled blood test.[1] **Id.** 768. The Fourth Amendment did not protect from such an intrusion "on the mere chance that desired evidence might be obtained." **Id.** at 770. Rather, there must be a "clear indication that . . . such evidence will be found" – the same type of indication as required for a search warrant. **Id.** In the instant case, a probable cause determination was made, resulting in the search warrant, and Defendant is not contesting that finding.[2]

---

[1]The Court takes judicial notice that puncturing a person's skin, muscle, and tissue with a hypodermic needle is more intrusive, painful, and risky then placing two sterile cotton swabs into a person's mouth and gently rubbing the inside of his cheek.

[2]In **Schmerber**, court advised that obtaining a search warrant first was preferred when the issue of invading another's body is in question. **Id.** at 770.

Under **Schmerber**, once the Court finds that the taking a DNA sample from Defendant is justified, the Court must then address "whether the means and procedures employed for taking his [DNA sample] [will respect] relevant Fourth Amendment standards of reasonableness." **Id.** at 768. The invasion in **Schmerber** was taking blood from the suspect. The court held that blood tests – taken in a hospital environment – are commonplace, require that a minimal amount of blood be extracted, and, for most people, "involve[ ] virtually no risk, trauma or pain." **Id.** at 771. "[T]he Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions . . . ." **Id.** at 772.

In **Winston v. Lee**, 470 U.S. 753 (1985), the Supreme Court expanded its discussion of invasive procedures by the state and held that it was a violation of the Fourth Amendment to involuntarily subject a suspect to surgery to remove a bullet to be used in evidence. **Id.** at 767. In so holding, the court delineated the factors to be considered when balancing the State's need for evidence and the individual's right to be protected from compelled bodily intrusions. These factors include the extent to which the procedure would endanger the safety or health of an individual; the extent of intrusion on the individual's dignity, personal privacy, and bodily integrity; and the community's interest in fairly and accurately determining guilt or innocence. **Id.** at 761-62.

Safety and Health of the Individual. Consideration of this factor weighs in favor of the Government.

As noted above, a puncture wound caused by a hypodermic needle is more threatening to one's health than gently rubbing a cotton swab on the inside of the cheek. Defendant

makes no credible argument that the buccal swab procedure may endanger his safety or health. Cf. **United States v. Lassiter**, 607 F.Supp.2d 162, 167 (D. D.C. 2009) ("[F]or good reason, defendant . . . does not argue that this procedure [taking the defendant's DNA by rubbing a cotton swab along the inside of his cheek] poses a threat to his health or safety."). The use of a sterile swab in the manner described herein imposes no additional risk to Defendant of an infection.

Defendant argues that forcing his mouth open is an invasive, dangerous, and improper use of force. Like the standard contempt case, however, the key to the severity of this swab rub is in Defendant's hands. If he voluntarily agrees to open his mouth, no physical force or coercion will be necessary. The protocol submitted by the lab technician provides that if Defendant resists the cotton swab test, a law enforcement officer will hold Defendant's nose closed until his mouth opens and the swab will then be rubbed on the inside of his cheeks.

Intrusion on Dignity, Personal Privacy, and Bodily Integrity. Again, the Court finds this procedure to be non-intrusive and reasonable. The rubbing of a cotton swab on the inside of a person's mouth in a medical environment does not unreasonably intrude on his dignity or bodily integrity. The Government has advised the Court and Defendant that his DNA sample and profile will be destroyed if he is acquitted of the crimes charged. If convicted, his DNA will be treated in the same manner as other evidence obtained from convicted individuals. Further, the Government's request for a DNA sample is for the limited purpose of this case. See **Lassiter**, 607 F.Supp.2d at 167 (finding that when DNA is sought for a limited purpose a court may wait to consider challenges to potential uses or misuses of that DNA until those uses have actually occurred).

Community's Interest in Justice. Consideration of the nature of the charges in this case – the personal safety of police officers and their families – makes the community's interest in accurately determining guilt or innocence very strong. See **Id.** (finding "the community's interest in accurately determining guilt or innocence to be particularly strong" when the alleged acts were of a violent nature). Moreover, unlike in **Winston**, 470 U.S. at 765-66, when the prosecution had "available substantial additional evidence" of the defendant's guilt that lessened its need to require that he undergo surgery to retrieve a bullet, the minimal intrusion to Defendant's bodily integrity is not outweighed by the potential availability of a handwriting expert to compare Defendant's writing to the letters in question.

For the foregoing reasons, consideration of the Winston factors favors the granting of the Government's request to compel Defendant to submit to the collection of a DNA sample. See **Lassiter**, 607 F.Supp.2d at 167-68 (granting similar motion after weighing Winston factors in case charging six defendants with "numerous violent offenses); **Apanovitch v. Houk**, No. 1:91CV2221, 2007 W.L. 1394148 (N.D. Ohio 2007) (granting similar motion in habeas case). Accordingly,

**IT IS HEREBY ORDERED** that the Government's request that Defendant be compelled to submit to the collection of his DNA is **GRANTED**. Such sample is to be taken consistent with the protocol submitted by the Government. Counsel for the Government is to have Defendant transported to the booking facility in the U.S. Marshal's office in the Thomas F. Eagleton United States Courthouse after September 2, 2009, and is to notify

Defendant's counsel of the time and place for such procedure.³ The Court further orders that all necessary and required medical procedures be used in the DNA collection and that the least force reasonable be used to obtain the sample should Defendant physically resist or become violent.

                                                            /s/Thomas C. Mummert, III
                                                            THOMAS C. MUMMERT, III
                                                            UNITED STATES MAGISTRATE JUDGE

Dated this  31st  day of August, 2009

---

³ Counsel for Defendant requested that if the Court enters such an order to stay the order's execution until after August 31, 2009, in that counsel will unavailable until after that date.