UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09CR00351 ERW |
| ) | |
| WILLIAM J. MABIE, ) | |
| ) | |
| Defendant. ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge Thomas C. Mummert, III [doc. #88], pursuant to 28 U.S.C. § 636(b).

Defendant William J. Mabie ("Defendant") filed a Motion for Appointment of Special Prosecutor [doc. #59], a Motion to Suppress Illegally Seized Evidence [doc. #68], and a Motion to Dismiss Counts 3-7 of Indictment [doc. #77]. The Report and Recommendation of Magistrate Judge Mummert concluded that each of these pending Motions should be denied. Defendant subsequently filed Objections to the Magistrate Judge's Report and Recommendation [doc. #89], however, he only objected to Magistrate Judge Mummert's findings with respect to Defendant's Motion to Suppress. Defendant did not object to Magistrate Judge Mummert's findings with respect to Defendant's Motion for Appointment of Special Prosecutor, or with respect to Defendant's Motion to Dismiss Counts 3-7. The Court will thus conduct a *de novo* review only as to Defendant's Motion to Suppress. The Court concludes that the Magistrate Judge's findings were correct, and therefore adopts the Magistrate Judge's findings of facts and conclusions of law.

## I. LEGAL STANDARD

"[W]hen a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, '[a] judge of the court shall make a de novo review determination of those portions of the report or specified proposed findings or recommendations to which objection is made. *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (*citing* 28 U.S.C. § 636 (b)(1)).[1] The district court has wide discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## II. DISCUSSION

### A. MOTION TO SUPPRESS

The Court begins by noting that no objections were filed to Magistrate Judge Mummert's recitation of the facts of this case. Therefore, this Court adopts Magistrate Judge Mummert's findings of fact in their entirety. The Court will not reiterate them here.

Defendant seeks to suppress evidence that was seized from the residence of Mary Mabie, Defendant's sister. Defendant also seeks to suppress digital data evidence that was obtained from a computer seized from Ms. Mabie's home, and that was accessed pursuant to a search warrant. Magistrate Judge Mummert found that the evidence at issue in this case was properly seized because Ms. Mabie consented to the search, and because the search warrant was valid. This Court agrees.

---

[1] 28 U.S.C. § 636(b)(1)(B) provides that "a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court . . . ." The statute further provides that each party may file written objections within ten days of being served with a copy of the magistrate judge's report and recommendation. *Id.* § 636(b)(1).

1.  *Validity of Ms. Mabie's Consent to Search*

Defendant first argues that Ms. Mabie did not voluntarily consent to the search of her residence. The Fourth Amendment's prohibition against unreasonable searches and seizures does not apply where consent to search has been given. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *United States v. Brown*, 345 F.3d 574, 579 (8th Cir. 2003). However, in order to be valid, such consent must be given "freely and voluntarily." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). In determining whether a person's consent was given freely and voluntarily, a court must examine the totality of the circumstances. *Id.* at 226. The individual characteristics of the person giving consent that should be considered include:

> (1) the defendant's age; (2) the defendant's general intelligence and education; (3) whether the defendant was under the influence of drugs or alcohol; (4) whether the defendant was informed of his Miranda rights prior to the consent; and (5) whether the defendant had experienced prior arrests so that he was aware of the protections the legal system affords to suspected criminals.

*United States v. Alcantar*, 271 F.3d 731, 737 (8th Cir. 2001). Courts should also consider the environment in which consent was given, specifically:

> whether the person who consented: (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either objected to the search or stood by silently while the search occurred.

*United States v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990) (internal citations omitted).

Defendant's sister, Mary Mabie, testified on Defendant's behalf, and provided a different account of the events that took place on August 20, 2008,[2] than that provided by the

---

[2] The Court will focus on the events that took place on August 20, 2008, rather than the initial interaction between the police officers and Ms. Mabie on August 4, 2008, because the evidence that is the subject of this Motion to Suppress was seized on August 20, 2008, and not on

Government's witness, St. Louis Police Detective John Anderson. Detective Anderson testified that he and two other police officers visited with Ms. Mabie on August 20, 2008, and that their conversation was civil and polite. Ms. Mabie, on the other hand, asserts that she was afraid of the officers and that they threatened her by saying that if she refused to consent to a search of her residence, they would go get a search warrant and come back at 2:00 a.m. and "trash" her house. Even if Ms. Mabie's version of the facts is correct, and Detective Anderson did actually tell her that they would get a search warrant and "trash" her house, a conclusion that this Court does not reach, the Court is convinced that, based on the totality of the circumstances, Ms. Mabie's consent was still given freely and voluntarily.

First, certain characteristics of Ms. Mabie demonstrate that her consent was voluntary. She is a mature and highly educated woman, who has a master's degree in nursing, in addition to her undergraduate degree. She is presently employed as a nurse, and is a law-abiding citizen, who has never been in trouble with the law. Because Ms. Mabie had previously rejected a request to search, and because the "Consent to Search" form that she signed clearly stated her right to decline a search, it is clear that she fully understood her rights under the law. There is also no indication that Ms. Mabie's judgment was impaired in any way.

More importantly, the environment in which Ms. Mabie gave her consent indicates that it was not coerced. Even if Ms. Mabie's version of the events is true, and Detective Anderson threatened her, the rest of the interaction was calm and civil. The officers were all dressed in plain clothes and did not display their weapons at any time. Additionally, numerous acts on the part of Ms. Mabie are contrary to her assertion that she was coerced into giving consent. For example,

---

August 4, 2008 (when no evidence was seized).

while sitting at the kitchen table with the officers, she openly discussed Defendant's anger issues, and her attempts to prevent him from sending threatening emails and letters by deleting them from the computer they shared. She also showed the officers where the computer was located and requested that her boyfriend locate some additional light bulbs, to assist the officers in their search of the dimly lit room. She then agreed to let the officers take the computer for a couple of days when they were unable to download the desired information. After that, Ms. Mabie showed the officers into Defendant's bedroom, and assisted them by pointing out and then emptying a trash can that contained relevant documents. Finally, she returned to the kitchen table and resumed her conversation with the officers, and even obtained some tissues for Detective Anderson after discussing his allergy to her pets. These actions are inconsistent with Ms. Mabie's assertion that she was coerced into consenting to the search of her residence.[3] Based on the totality of the

---

[3]In *United States v. $61,433.04 U.S. Currency*, the Eastern District of North Carolina reached a similar conclusion. 894 F. Supp. 906 (E.D. N.C. 1995), *aff'd United States v. Taylor*, 90 F.3d 903 (4th Cir. 1996). In that case, the court was faced with two different versions of the events, including the property owner's story that the police officers threatened to "tear up" the house if they had to get a warrant. *Id.* at 921. The court determined that, even if the property owner's version of the events was true, his consent was valid because he behaved in a manner that was inconsistent with denial of consent. *Id.* at 922 (noting that "[t]here were no deprivations, no physical seizure of [the property owner], and no other factors that would vitiate such consent" and that "[a]fter consent was given, [the property owner] sat at the dining room table . . . drinking cognac, while officers searched his house").

In his Objections to the Magistrate Judge's Report and Recommendation, Defendant cites to *United States v. Kampbell*, 574 F.2d 962 (8th Cir. 1978) (per curiam), in support of his argument that Detective Anderson's threat vitiated Ms. Mabie's consent. However *Kampbell* is distinguishable from the case at hand. In *Kampbell*, there was no evidence of inconsistent, cooperative behavior after the consent was given; rather, there was merely evidence that a threat was made. In fact, it does not appear that the defendant was even present at the time of the search to engage in inconsistent behavior, as he was being interrogated at a police station when the threat was made, the consent was given, and, seemingly, when the search was carried out. *Id.* at 962-63. The Court's opinion that Ms. Mabie's consent was voluntary is based not on the seriousness of the alleged threat itself, but on her inconsistent behavior afterwards. Therefore, Defendant's reliance on *Kampbell* is not persuasive.

circumstances, it is clear that Ms. Mabie's consent was freely and voluntarily given, even if Detective Anderson did actually tell her that they would get a search warrant and "trash" her house.

Defendant has also argued that Ms. Mabie did not have authority to consent to a search of certain areas of the house, specifically the computer and Defendant's bedroom. In order for a consent to search to be valid, it must be given by a person who has some authority over the premises or the item to be searched. *United States v. Matlock*, 415 U.S. 164, 171 (1974). However, even if the person giving consent does not have actual authority, consent may still be valid when the police reasonably believed that the person had authority to consent. *Illinois v. Rodriguez*, 497 U.S. 177, 185-86 (1990). Thus, the relevant inquiry, based on an objective standard, is: "'would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises?" *Id.* at 188 (alterations in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)).

In this case, Magistrate Judge Mummert determined that it was clearly reasonable for the officers to believe that Ms. Mabie had authority to consent to the search of the bedroom and computer because she owned the residence and the computer, paid for Internet service, and merely allowed Defendant to live with her and use her computer. Defendant did not object to these findings of Magistrate Judge Mummert. Considering that there is no evidence that Ms. Mabie was restricted from using any part of the computer or from entering Defendant's bedroom, this Court agrees with Magistrate Judge Mummert, and finds that Ms. Mabie had proper authority to consent to the search. Accordingly, the Court finds that her consent was valid and proper.

2. *Validity of Search Warrant*

At the evidentiary hearing, Defendant challenged the validity of the search warrant that was obtained prior to searching the seized computer. Defendant argued that the affidavit that supports the search warrant contains a typographical mistake, specifically that the term "counterfeit check" is erroneously included in the conclusion paragraph, and, therefore, the search warrant is invalid. In order to be valid, a search warrant must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband, or a person for whose arrest there is probable cause, may be found in the place to be searched. *Warden v. Hayden*, 387 U.S. 294 (1967); *Johnson v. United States*, 333 U.S. 10 (1948); Fed. R. Crim. P. 41. Probable cause is defined as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

Magistrate Judge Mummert recognized that the search warrant contained a typographical mistake, but determined that the error was not significant enough to invalidate the search warrant. Defendant did not object to the Magistrate Judge's conclusion, and this Court agrees that, despite the typographical error, probable cause still existed to support the issuance of the search warrant. Defendant did not meet his burden of showing that the error was false, *and* that its inclusion in the affidavit was knowing, intentional, or made with reckless disregard for the truth. Accordingly, the

7

search warrant was properly supported by probable cause and the search of the computer was valid.

### B. OTHER PENDING MOTIONS

As the Court previously noted, there are two additional pending Motions in this case, Defendant's Motion for Appointment of Special Prosecutor and Defendant's Motion to Dismiss Counts 3-7. In his Report and Recommendation, Magistrate Judge Mummert concluded that both of these Motions should be denied. Although Defendant filed objections to this Report and Recommendation, he did not object to Magistrate Judge Mummert's recommendation to deny Defendant's Motion for Appointment of Special Prosecutor and Defendant's Motion to Dismiss Counts 3-7. Because Defendant did not file objections with respect to these two Motions, there is no need to conduct a *de novo* review. The Court has reviewed Magistrate Judge Mummert's findings of fact and conclusions of law, finds them to be reasonable, and adopts them in full.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Appointment of Special Prosecutor [doc. #59] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Illegally Seized Evidence [doc. #68] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Counts 3-7 of Indictment [doc. #77] is **DENIED**.

Dated this 15th Day of October, 2009.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE